# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 1:16-cv-00425-TDS-JEP |
| STATE OF NORTH CAROLINA; PATRICK McCRORY, in his Official Capacity as Governor of North Carolina; NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; UNIVERSITY OF NORTH CAROLINA; and BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, | § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**BRIEF OF TEXAS, ARKANSAS, ARIZONA, WEST VIRGINIA, ALABAMA, WISCONSIN, GEORGIA, NEBRASKA, LOUISIANA, SOUTH CAROLINA, COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin, UTAH, and GOVERNOR PHIL BRYANT of the State of Mississippi AS *AMICI CURIAE* IN OPPOSITION TO UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION**

## INTEREST OF *AMICI CURIAE*

*Amici* are some of the fifty States, and over 100,000 school districts across the country, impacted by the efforts of federal agencies to employ their executive power to act legislatively and rewrite a duly enacted law of Congress. While the extant dispute involves a single State, the federal actions at issue affect everyone.

In addition to addressing why recent developments support a stay of the Court's proceedings, this short brief should assist the Court in understanding better the history of federal behavior on the topic at hand. Moreover, this brief demonstrates the nationwide harm caused by the federal government in usurping the authority of States and local school districts to exercise control over the education of children within their jurisdiction, and the facilities in which those children are educated. Finally, this brief addresses the coercive nature of the tactics employed by federal agencies to enforce their new rule, all in violation of the Spending Clause.

## ARGUMENT

### I. The Significance of Other Related Proceedings.

As the Court is aware, a federal court in Texas issued a preliminary injunction ("Injunction") on Aug. 21, 2016 in *Texas et al v. United States et al*, No. 7:16-cv-00054-O (N.D. Tex. Aug. 21, 2016). That Injunction, filed as a supplemental authority with this Court on Aug. 22, 2016 (ECF No. 152-1), is nationwide in scope and applies to guidelines promulgated by various federal agencies (including DOJ) asserting that "all persons must be afforded the opportunity to have access to restrooms, locker rooms, shower, and other intimate facilities which match their gender identity rather than their biological sex." Injunction at 2–3 & n.4 (citing, *inter alia*, May 13, 2016

DOJ/DOE "Dear Colleague Letter on Transgender Students," which is filed of record in this matter at ECF No. 76-14); *id.* at 36 ("The Court concludes that this injunction should apply nationwide.").

While the Injunction does not specifically prevent DOJ from continuing this litigation, *id.* at 37, and this Court has acknowledged the same, ECF No. 127 at 35–36, it nonetheless supports (1) staying these proceedings pending the Supreme Court's disposition of the certiorari petition filed on Aug. 29, 2016 in *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, No. 15-2056 (4th Cir.),[1] (2) staying these proceedings pending the Fourth Circuit's disposition of the newly filed notice of appeal by the individual Plaintiffs in this matter (ECF No. 128), and (3) denying the preliminary relief requested by the United States. Indeed, now that the federal policies at issue are subject to a nationwide injunction, will be inspected again by the Fourth Circuit, and also scrutinized by the Supreme Court, granting the United States' preliminary injunction motion would bestow upon North Carolina the distinction of making it the *only* State unable to enforce its policy regarding access to intimate areas.

### A. The Injunction Supports Denying the United States' Motion for Preliminary Injunction.

Notwithstanding this Court's granting of relief to individual litigants (ECF No. 127), preliminary relief should not be granted to the United States. First, as confirmed by the Injunction, all States, including North Carolina, are irreparably harmed if the federal government is permitted *in toto* to override statewide policies on restroom and locker room access. *See* Injunction at 34–35 (concluding States are irreparably harmed, in part because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of

---

[1] The Petition for Certiorari was filed on Aug. 29, 2016 and *available online at* http://www.scotusblog.com/wp-content/uploads/2016/08/Gloucester-Cty-Cert-Pet-FINAL-w-APPX.pdf.

*Brief as Amici Curiae in Opposition to United States' Motion for Preliminary Injunction*     Page 3

its people, it suffers a form of irreparable injury") (and collecting cases).

Next, the Injunction affirms that the balance of equities and public interest tip strongly in favor of allowing the continued enforcement of State and local laws that govern access to intimate areas. Injunction at 35 (concluding that "failure to grant an injunction will place [States] in the position of either maintaining their current policies in the face of the federal government's view that they are violating the law, or changing them to comply with the Guidelines and cede their authority over the issue"). This is especially so for States within the Fourth Circuit "since the Supreme Court stayed the Fourth Circuit's decision [in *G.G.*] . . ., and a decision from the Supreme Court in the near future may obviate the issues in this lawsuit." Injunction at 36.

Third, the Injunction confirms that the text, structure, and legislative history of Title IX and its implementing regulations (34 C.F.R. §§ 106.32, 106.33, 106.61) plainly allow the separation of intimate areas on the basis of "biological and anatomical differences between male and female students as determined at their birth." Injunction at 31. Additionally, the Injunction concludes that the Title IX regulation primarily at issue (34 C.F.R. § 106.33) is not ambiguous and, thus, no deference is warranted to the various federal agency interpretations of those regulations. *Id.* at 30–33.

### B. The Injunction Supports Staying These Proceedings.

The Injunction supports staying these proceedings pending the Supreme Court's disposition of the pending certiorari petition seeking review of the *G.G.* decision. Indeed, a nationwide injunction barring the federal government from relying on its interpretations adopted by the Fourth Circuit increases the likelihood of Supreme Court review in *G.G. See* Sup. Ct. R. 10(c) (certiorari is warranted where "a United States court of appeals has decided an important

question of federal law that has not been, but should be, settled by [the Supreme] Court"). Moreover, the court in Texas recognized that the Supreme Court's action in recalling and staying the *G.G.* mandate indicates that the Supreme Court is likely to review the *G.G.* decision. Injunction at 22 n.15 (recognizing that "[t]he Supreme Court takes such actions" as recalling and staying a circuit court's mandate "only on the rarest of occasions." (citing *Bd. of Ed. of City Sch. Dist. of City of New Rochelle v. Taylor*, 82 S. Ct. 10, 10 (1961); *Russo v. Byrne*, 409 U.S. 1219, 1221 (1972)).

Therefore, "a decision from the Supreme Court in the near future may obviate the issues in this lawsuit." Injunction at 36. The same is true for this litigation, thus making a stay of the proceedings warranted.

## II. The New Rule Hurts Every State and School District.

The full breadth of the new rule at issue was brought to the fore through the filing of this case. That new rule is articulated within the May 13, 2016 Joint Letter of the U.S. Department of Education and U.S. Department of Justice ("DOE/DOJ Joint Letter"), filed herein at ECF No. 76-14. Under the new rule, Title-IX linked funds are now no longer available to otherwise eligible schools that do not open their intimate facilities to both sexes. This affects the rights and obligations of States, public schools, and students across the country, as shown by this case and other like litigation across the country.[2]

Looking back, however, it is now clear that federal agencies have been enforcing this new rule for years, across the country, with every State and school district the clear object of their new rule. Thus, the new rule harms States and school districts from coast to coast, usurping their lawful authority

---

[2] *See, e.g., Texas et al v. United States et al*, No. 7:16-cv-00054 (N.D. Tex.); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-524 (S.D. Ohio); *Nebraska et al v. United States et al*, No. 4:16-cv-3117 (D. Neb.).

over the regulation of educational institutions and facilities.

## A. The New Rule Usurps Authority in Every Jurisdiction.

Laws across the country establish State and local officials' power to manage their educational facilities, including physical control over intimate areas. "'By and large, public education in our Nation is committed to the control of state and local authorities.'" *Goss v. Lopez*, 419 U.S. 565, 578 (1975) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). This is true in North Carolina,[3] as well as every other State, to wit: Alabama,[4] Alaska,[5] Arizona,[6] Arkansas,[7] California,[8] Colorado,[9] Connecticut,[10] Delaware,[11] Florida,[12] Georgia,[13] Hawai'i,[14] Idaho,[15] Illinois,[16] Indiana,[17] Iowa,[18] Kansas,[19] Kentucky,[20] Louisiana,[21] Maine,[22] Maryland,[23] Massachusetts,[24] Michigan,[25] Minnesota,[26]

---

[3] *See* N.C. CONST. art. IX, § 5; N.C. GEN. STAT. § 115C-12.
[4] *See* ALA. CODE §§ 16-3-11, 16-3-12 (state boards); 16-8-8–16-8-12 (city and county boards).
[5] *See* ALASKA CONST. art. VII, § 1; ALASKA STAT. § 14.07.010–020; ALASKA ADMIN. CODE tit. IV § 31.010.
[6] *See* ARIZ. REV. STAT. §§ 15-203(A)(1) (state), 15-341(A)(1) (local), 15-341(A)(3) (local).
[7] *See* ARK. CONST. art. XIV, § 4; ARK. CODE §§ 6-11-105, 6-13-1301, 6-21-101.
[8] *See* CAL. CONST. art. IX, §§ 2, 7; CAL. EDUC. CODE §§ 33301, 33307.
[9] *See* COLO. CONST. art. IX, § 9; COLO. REV. STAT. §§ 22-2-106, 22-43.7-107.
[10] *See* CONN. CONST. art. VIII, § 1; CONN. GEN. STAT. §§ 10-240–241.
[11] *See* DE. CONST. art. 10, § 2; DEL. CODE ANN. tit. 14, §§ 121, 801–08, 1501.
[12] *See* FLA. CONST. art. IX, § 2; FLA. STAT. §§ 1001.42(2), 1001.43(1), 1013.04.
[13] *See* GA. CODE §§ 20-2-59, 20-2-520.
[14] *See* HAW. CONST. art. X, §§ 2–3; HAW. REV. STAT. §§ 302A-1101, 302A-1148, 302A-1506; HAW. CODE R. § 8-39-2.
[15] *See* IDAHO CONST. art. IX, §§ 1–2; IDAHO CODE §§ 33-101, 33-107, 33-601.
[16] *See* ILL. CONST. art. X, § 2; 105 ILL. COMP. STAT. §§ 5/1A-4, 34-18.
[17] *See* IND. CONST. art. VIII, §§ 1, 8; IND. CODE §§ 20-19-2-2.1, 20-19-2-14, 20-26-5-1, 20-26-3-4.
[18] *See* IOWA CONST. art. IX, 2nd, § 1; IOWA CODE §§ 256.1, 274.1, 297.9.
[19] *See* KAN. CONST. art. VI, § 2; KAN. STAT. § 72-1033.
[20] *See* KY. REV. STAT. §§ 156.070, 160.290.
[21] *See* LA. CONST. art. VIII, § 3; LSA-R.S. § 17:100.6.
[22] *See* ME. REV. STAT. tit. 20-A, §§ 201–406, 1001(2), 6501.
[23] *See* MD. CONST. art. VIII, § 1; MD. CODE, EDUC. §§ 2-205(b)(1–2), 4-101, 4-108, 4-115.
[24] *See* MASS. GEN. LAWS. ch. 69, § 1B; ch. 71 § 71.
[25] *See* MICH. CONST. art. VIII, §§ 2–3; MICH. COMP. LAWS. § 380.483a.
[26] *See* MINN. CONST. art. XIII, § 1; MINN. STAT. §§ 123B.02, .09, .51.

Mississippi,[27] Missouri,[28] Montana,[29] Nebraska,[30] Nevada,[31] New Hampshire,[32] New Jersey,[33] New Mexico,[34] New York,[35] North Dakota,[36] Ohio,[37] Oklahoma,[38] Oregon,[39] Pennsylvania,[40] Rhode Island,[41] South Carolina,[42] South Dakota,[43] Tennessee,[44] Texas,[45] Utah,[46] Vermont,[47] Virginia,[48] Washington,[49] West Virginia,[50] Wisconsin,[51] and Wyoming.[52] Yet, the DOE/DOJ Joint Letter arrogates to the federal government administrative and enforcement responsibility over that which does not belong to them.

That some States or school districts may support the policy or substance of the new rule does not change the fact that their authority to make decisions in the best interests of their circumstance is usurped by the new rule. Thus, while the specific outcome of the case at hand may be limited to the parties, it will functionally impact the authority of all sovereigns.

---

[27] *See* MISS. CODE ANN. § 37-7-301.
[28] *See* MO. CONST. art. IX, § 1; MO. STAT. §§ 161.092, 171.011, 171.0011(1), 177.031.
[29] *See* MONT. CONST. art. X, §§ 8, 9; MONT. CODE § 20-3-324(15); MONT. ADMIN. R. 10.55.908(6).
[30] See NEB. CONST. art. VII, § 2; NEB. REV. STAT. §§ 79-318(6), 79-501, 79-526(1).
[31] *See* NEV. CONST. art. XI, § 1; NEV. REV. STAT. §§ 385.075, 385.005(1), 386.010(2), 386.350; 393.010.
[32] *See* N.H. REV. STAT. §§ 186:5, 195:6; N.H. CODE ADMIN. R. Ed § 303.01.
[33] *See* N.J. CONST. art. VIII, § 4; N.J. STAT. §§ 18A:11-1(c), 18A:4-15.
[34] *See* N.M. CONST. art. XII, § 6; N.M. STAT. §§ 22-2-1(A), 22-5-4(H).
[35] *See* N.Y. CONST. art. XI, § 1; N.Y. EDUC. LAW § 414.
[36] *See* N.D. CENT. CODE §§ 15.1-02-04(1)–(2), 15.1-09-33(3).
[37] *See* OHIO CONST. art. VI, §§ 3, 4; OHIO REV. CODE § 3313.47.
[38] *See* OKLA. CONST. art. XIII, § 5; OKLA. STAT. tit. 70, § 5-117.
[39] *See* OR. REV. STAT. §§ 332.107, 332.155, 332.172(5).
[40] *See* PA. CONST. art. III, § 14; 24 PA. STAT. §§ 5-507, 7-701, 7-775, 6513.
[41] *See* 16 R.I. GEN. LAWS § 16-2-9(a), (a)(5), (a)(8).
[42] *See* S.C. CONST. art. XI, § 3; S.C. CODE §§ 59-19-10, 59-19-90(1), (5).
[43] *See* S.D. CODIFIED LAWS §§ 13-3-1.4, 13-3-80, 13-8-39, 13-24-9, 13-24-11, 13-24-16, 13-32-1.
[44] *See* TENN. CODE ANN. §§ 49-1-302, 49-1-201, 49-2-203(a)(2), 49-1-201(a), 49-1-201(c)(5).
[45] *See* TEX. CONST. art. 7, § 1; TEX. EDUC. CODE §§ 4.001(b), 11.002, 11.051, 11.201, 46.008.
[46] *See* UTAH CODE §§ 53A-1-101, 53A-3-402(3).
[47] *See* VT. STAT. tit. 16, § 563(3), (5), (7).
[48] *See* VA. CONST. art. VIII, §§ 4, 7. VA. CODE §§ 22.1-79, 22.1-125.
[49] *See* WASH. REV. CODE §§ 28A.150.070, 28A.335.010(1)(b), 28A.335.090(1).
[50] *See* W. VA. CONST. art. XII, § 2 (state); W. VA. CODE §§ 18-5-1 *et. seq.* (local), 18-5-9(4).
[51] *See* WIS. STAT. chs. 118, 115; WIS. STAT. s. 120.12(1), 120.13(17), 120.12(12).
[52] *See* WYO. STAT. § 21-3-111.

### B. The New Rule is Enforced Uniformly in Every State.

Irrespective of the individual facts or circumstances presented in this matter, every federal agency exercising enforcement power over claims regarding one's "gender identity" (in the context of Titles VII or IX) demands or adjudicates that anyone claiming a "gender identity" opposite their sex has access to the intimate areas of their choice—and all without regard to the individual circumstances presented, or any resulting impact on third parties.

#### 1. EEOC Enforcement.

DOE is not the only federal agency to re-author the meaning of "sex" in Titles VII and IX as applied to intimate areas. EEOC determined that an employer must provide restroom access corresponding to one's "internal sense of being male or female (or, in some instances, both or neither)," *Lusardi*, EEOC Decision No. 0120133395, 2015 WL 1607756, at *6 (Apr. 1, 2015), and subsequently issued a "Fact Sheet" regarding this new "requirement."[53] In neither *Lusardi* nor its "Fact Sheet" did EEOC address the privacy needs and expectations of others, *see* n.68, *infra*, or address the tension that its new rule creates with Title VII's prohibition against hostile work environments. Indeed, forcing the sexes to mix in intimate areas in the workplace creates a hostile and sexually-harassing work environment for countless employees.[54]

#### 2. DOJ & DOL's Enforcements.

Following EEOC's lead, DOJ subsequently substituted "gender identity" for "sex."[55] The Department of Labor (DOL), through the Occupational Health

---

[53] *See* EEOC Fact Sheet, *available online at* https://www.eeoc.gov/eeoc/publications/fs-bathroom-access-transgender.cfm.

[54] *See, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007) (acknowledging that employer was "genuinely concerned" about the possibility of liability complaints associated with employee's use of restroom for the opposite sex).

[55] *See, e.g.*, DOJ's *Treatment of Transgender Employment Discrimination Claims* at 2, *available online at* https://www.justice.gov/opa/pr/attorney-general-holder-directs-department-include-gender-

*Brief as Amici Curiae in Opposition to United States' Motion for Preliminary Injunction*     Page 8

Case 1:16-cv-00845-TDS-JEP   Document 62-1   Filed 08/31/16   Page 8 of 14

and Safety Administration (OHSA) acted similarly, advising that "employees should be permitted to use the facilities that correspond with their gender identity."[56] Like EEOC, DOJ and OSHA did not acknowledge the privacy needs and expectations of other employees, or whether their decrees would lead to hostile work environments.

In May 2016, DOJ instituted this lawsuit after the North Carolina legislature affirmed that government and schools may maintain separate-sex intimate facilities. Before filing this matter, DOJ declared the State was violating Titles VII and IX.[57]

### 3. DOE's Enforcements.

In the DOE/DOJ Joint Letter, DOE revealed that it has been enforcing the new rule across the country for some time. Moreover, DOE's past enforcements are uniform, leaving no room for schools to apply individual solutions and remedies that work best for their institutions and student bodies. No matter the circumstances presented, DOE demanded the same result—that students be given access to the intimate spaces that conform with their chosen "gender identity," and without regard to the privacy, dignity, or safety of other students.

In addition to the dispute before the Court, this exacting and uniform demand is seen regarding schools in Kern County, CA,[58] Mecklenburg County,

---

identity-under-sex-discrimination.

[56] *See* OSHA's *Best Practices: A Guide to Restroom Access for Transgender Workers* at 4, *available online at* https://www.osha.gov/Publications/OSHA3795.pdf.

[57] *See* Letter from Vanita Gupta, Principal Deputy Assistant Attorney General, to Pat McCrory, Governor of North Carolina (May 4, 2016), *available online at* http://online.wsj.com/public/resources/documents/2016.05.04StateFinal.pdf.

[58] *See* Resolution Agreement, *In re Tehachapi Unified Sch. Dist., CA*, OCR No. 09-11-1031 (June 30, 2011), *available online at* www.ed.gov/ocr/docs/investigations/09111031-b.pdf.

*Brief as Amici Curiae in Opposition to United States' Motion for Preliminary Injunction*     Page 9

Case 1:16-cv-00845-TDS-JEP   Document 62-1   Filed 08/31/16   Page 9 of 14

NC,[59] Cook County, IL,[60] Anoka County, MN,[61] Gloucester County, VA,[62] Los Angeles County, CA,[63] [64] Medina County, OH,[65] Summit County, OH,[66] and Sumner County, TN.[67] These are only the enforcements publicly known.

### III. DOE Violates the Spending Clause Across the Country.

DOE's application of their new rule violates the Spending Clause in likely every jurisdiction across the country.

#### A. No "Clear Notice" of the New Rule.

"The legitimacy of Congress's exercise of the spending power 'rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.''" *NFIB v. Sebelius*, 132 S. Ct. 2566, 2602 (2012) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Local officials must be able to "clearly understand," from the language used by Congress, the

---

[59] *See* Resolution Agreement, *In re Cent. Piedmont Cmty. Coll., NC*, OCR No. 11-14-2265 (Aug. 13, 2015), *available online at* www.ed.gov/ocr/docs/investigations/more/11142265-b.pdf. Though this dispute did not involve access to intimate areas, DOE compelled the college to agree "that gender-based discrimination is a form of discrimination based on sex and state that gender-based discrimination includes discrimination based on a student's gender identity, gender expression, gender transition, transgender status, or gender nonconformity."

[60] *See* Resolution Agreement, *In re Township High Sch. Dist. 211, IL*, OCR No. 05-14-1055 (Dec. 2, 2015), *available online at* www.ed.gov/ocr/docs/investigations/more/05141055-b.pdf. *See also Students and Parents for Privacy v. U.S. Dep't of Educ.*, No. 1:16-cv-04945 (N.D. Ill.) (ECF No. 1 at ¶¶ 99–103).

[61] *See* Consent Decree, *Doe v. Anoka-Hennepin Sch. Dist. No. 11, MN* (D. Minn. Mar. 1, 2012), *available online at* http://www2.ed.gov/about/offices/list/ocr/docs/investigations/05115901-d.pdf.

[62] In *G.G. v. Gloucester Cnty. Sch. Bd.*, DOJ filed a Statement of Interest and argued that the school board's policy of designating restrooms on the basis of biological sex violates Title IX. *G.G. v. Gloucester Cnty. Sch. Bd.*, 4:15-cv-00054-RGD-DEM (E.D. Va.) (ECF No. 28). *See also G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 723 (4th Cir. 2016). The Supreme Court recalled the Fourth Circuit's mandate and stayed the preliminary injunction entered by the district court. *See Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, No. 16-A-52, 2016 WL 4131636 at *1 (Aug. 3, 2016).

[63] *See* Resolution Agreement, *In re Downey Unified Sch. Dist., CA*, OCR No. 09-12-1095, (Oct. 8, 2014), *available online at* www.ed.gov/documents/press-releases/downey-school-district-agreement.pdf.

[64] *See* Resolution Agreement, *In re Arcadia Unified. Sch. Dist., CA*, OCR No. 09-12-1020, DOJ Case No. 169-12C-70, (July 24, 2013), *available online at* www.justice.gov/sites/default/files/crt/legacy/2013/07/26/arcadiaagree.pdf.

[65] *See Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-524 (S.D. Ohio).

[66] *Id.*

[67] *See* Letter of Investigation, *In re Sumner Cnty. Sch. Dist., TN*, OCR No. 04-16-1526, (Aug. 9, 2016), *available online at* ECF No. 57-1, *Texas et al. v. United States et al.*, 7:16-cv-00054-O (N.D. Tex.).

*Brief as Amici Curiae in Opposition to United States' Motion for Preliminary Injunction*     Page 10

conditions attached to the money. *Arlington Cent. Sch. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (clear notice was not provided when the text of the law "does not even hint" that fees must be paid to a prevailing party, even though the legislative history indicated otherwise); *NFIB*, 132 S. Ct. at 2606 (Congress's power to legislate under the Spending Clause "does not include surprising participating States with post-acceptance or retroactive conditions." (quoting *Pennhurst*, 451 U.S. at 25)).

Title IX does not say (or "even hint") that the receipt of federal education funding is conditioned on opening intimate areas to both sexes. To the contrary, Title IX, and its implementing regulations, permit separation based on biological sex.[68] The DOE/DOJ Joint Letter is an unlawful, *post hoc* attempt to rewrite the terms attached to Title IX monies. Because Congress did not provide clear notice that Title IX funds were linked to an "all comers" restroom and intimate areas policy—and in fact *allows* separate-sex facilities—DOE violates the Spending Clause.

### B. Unconstitutional Coercion.

"Congress may use its spending power to create incentives for States to act in accordance with federal policies, but when pressure turns to compulsion,

---

[68] The evidence that the plain meaning of the term "sex" refers to a biological category is overwhelming. In Title IX, Congress proclaimed that "nothing contained herein shall be construed to prohibit any educational institution . . . from maintaining separate living facilities for the different sexes," 20 U.S.C. § 1686, and was clear that it envisioned "sex" biologically. *See* 117 Cong. Rec. 30407, 39260, 39263 (1971); 118 Cong. Rec. 5807 (1972). The Department of Health, Education, and Welfare (HEW) made clear that "living facilities" extended to "toilet, locker room, and shower facilities," and that separating biological men and women is appropriate. *See* 34 C.F.R. §§ 106.32(b); 106.33. Justice Ginsburg, then a law professor, concluded that "[s]eparate places to disrobe, sleep, perform personal bodily functions are permitted, in some situations required, by regard for individual privacy," Ginsburg, The Fear of the Equal Rights Amendment, WASH. POST, Apr. 7, 1975, at A21, as did the U.S. Commission on Civil Rights. *See* U.S. Comm'n on Civil Rights, Sex Bias in the U.S. Code 216 (1977) ("[T]he personal privacy principle permits maintenance of separate sleeping and bathroom facilities."). And the Supreme Court reads the requirements of Title IX the same way. *See*, *e.g.*, *United States v. Virginia*, 518 U.S. 515, 551 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements . . . .").

the legislation runs contrary to our system of federalism." *NFIB*, 132 S. Ct. at 2602. When conditions on the receipt of funds "take the form of threats to terminate other significant independent grants, the conditions are properly viewed as a means of pressuring the states to accept policy changes." *Id.* at 2604; *cf. South Dakota v. Dole*, 483 U.S. 203, 211 (1987). And the threatened loss of an invaluable portion of one's budget "is economic dragooning that leaves [non-federal governments] with no real option but to acquiesce" to the federal demands. *Id.* at 2605.

State and local entities that do not comply with the DOE/DOJ Joint Letter risk losing *all* of their federal education funding, as demonstrated by DOE's prior enforcements. And the "financial 'inducement' [the federal government] has chosen is much more than 'relatively mild encouragement,'" *NFIB*, 132 S. Ct. at 2604, but a proverbial "gun to the head" of States and school districts. *Id.* School districts throughout the country receive a share of the $69,867,660,640 in annual funding provided by DOE.[69] Threatening to withhold over $69 billion in economic funding from the nation's public schools is clearly "economic dragooning." Here, DOE's "gun to [its] head" jeopardizes substantial percentages of funding across the country.[70] Accordingly, the conditions in the DOE/DOJ Joint Letter amount to unconstitutional coercion.

## CONCLUSION

The United States' Motion for Preliminary Injunction should be denied.

---

[69] *See* DOE, *Funds for State Formula-Allocated and Selected Student Aid Programs, U.S. Dep't of Educ. Funding*, at 120, *available online at* http://www2.ed.gov/about/overview/budget/statetables/index.html (charts listing the amount of federal education funding by program nationally and by state).
[70] *See, e.g.*, Nat'l Ctr. For Educ. Statistics, U.S. Dep't of Educ. & Institute of Educ. Sciences, *Digest of Education Statistics*, Tab. 235.20, *available online at* https://nces.ed.gov/programs/digest/d15/tables/dt15_235.20.asp?current=yes.

*Brief as Amici Curiae in Opposition to United States' Motion for Preliminary Injunction*  Page 12

Case 1:16-cv-00845-TDS-JEP   Document 62-1   Filed 08/31/16   Page 12 of 14

Respectfully submitted this the 31st day of August, 2016,

| | |
|---|---|
| LESLIE RUTLEDGE<br>Attorney General of Arkansas | KEN PAXTON<br>Attorney General of Texas |
| MARK BRNOVICH<br>Attorney General of Arizona | JEFFREY C. MATEER<br>First Assistant Attorney General |
| PATRICK MORRISEY<br>Attorney General of West Virginia | BRANTLEY STARR<br>Deputy First Assistant Attorney General |
| LUTHER STRANGE<br>Attorney General of Alabama | PRERAK SHAH<br>Senior Counsel to the Attorney General |

BRAD SCHIMEL
Attorney General of Wisconsin

SAM OLENS
Attorney General of Georgia

DOUG PETERSON
Attorney General of Nebraska

JEFF LANDRY
Attorney General of Louisiana

ALAN WILSON
Attorney General of South Carolina

SEAN REYES
Attorney General of Utah

*/s/ Andrew D. Leonie*
ANDREW D. LEONIE*
Associate Deputy Attorney General for the Office of Special Litigation
Andrew.Leonie@texasattorneygeneral.gov

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS*
Associate Deputy Attorney General for the Office of Special Litigation
Austin.Nimocks@texasattorneygeneral.gov

MICHAEL TOTH
Senior Counsel for the Office of Special Litigation

Office of Special Litigation
Texas Attorney General's Office
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
Tel: 512-936-1414

*/s/ J. Daniel Bishop*
Representative J. Daniel Bishop
North Carolina General Assembly
N.C. State Bar No. 17333
  Local Counsel of Record for M.D.N.C.
300 N. Salisbury Street, Room 607
Raleigh, NC 27603-5925
Tel: 919-715-3009
Dan.Bishop@ncleg.net

*ATTORNEYS FOR AMICI CURIAE*

* Appearing by special appearance pursuant to Local Rule 83.1(d)

## CERTIFICATE OF SERVICE

I, Austin R. Nimocks, hereby certify that on this the 31st day of August, 2016, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Austin R. Nimocks*
Austin R. Nimocks*

* Appearing by special appearance pursuant to Local Rule 83.1(d)